Thank you, Your Honor. May it please the Court, Erickson Davis for Appellant Tracey Hampton-Stein, who was also appealing on behalf, as executor of the trust, and as guardian ad litem for her daughter. I will be referring to her as Miss Stein. As a preliminary matter, well, first of all, as the Court, I'm sure, is aware, this appeal is a result of an appellant's case being dismissed in the District Court after the granting of a slap motion. Specifically, the claim or cause of action for malicious prosecution is the one we will be addressing this morning. As a preliminary matter, it becomes frustrating in these slap motion situations where there is no bright line rule as to how much evidence you need to present in order to defeat a slap motion. Curiously, Judge Klausner of the District Court below the Respondent Court himself, in a previous ruling, said, Since an anti-slap motion is brought at an early stage of proceedings, the appellant's burden of establishing a probability of success is not high. We as appellants, and anyone who has ever lost a slap motion, would like to think that means you only have to submit the minimal amount of evidence in order to establish we have now defeated the slap motion. Indeed, the State Supreme Court itself has said in another case, Nivelliere, only a cause of action that satisfies both prongs, i.e., that arises from protected speech or petitioning and lacks even minimal merit. So, we have one court saying the bar is not very high, the Supreme Court saying only minimal merit need be shown. The word probable is actually a misnomer, although it's there in the case law. It doesn't mean you have to show probability of success at this stage in order to defeat the slap motion. Well, that's what I would infer, Your Honor, from the reference to minimal merit. I mean, probability, some people would say, more than 50%. The California Supreme Court has given us a lot of words and a lot of mush, but I think however you parse those words, you don't have to show probability of success in order to defeat the motion. Well, as I will now review, we feel we met what should have been a minimal merit in this case. Let's talk about what you did have rather than standard, because the standard is a little mushy. I'll grant you that, but for me at least it seems less than probability. Well, first of all, the first element for establishing malicious prosecution is the idea that the case was terminated in appellant's favor. In this case, this is undisputed. The respondents eventually dismissed their case, what we call the conveyance lawsuit, and the liaise pendants after appellants filed their motion to expunge. How long was that between the time of initial filing and the time of voluntary dismissal? I apologize, Your Honor, I don't have those facts right off the top of my head. I think it's four months. Am I wrong? I can't dispute that. Okay. But Your Honor has addressed me to another preliminary issue, which is we pointed out to the district court that there were procedural errors, that the district court just kind of waved aside and said, well, it doesn't matter, it's de minimis or however it put it. But again, it's frustrating. The first thing that was violated was the local rule 7-3, which says before you can file a motion like this, you have to meet and confer with the opposition. This was never done. Now, I grant the court this may not be a big deal. This may be just a housekeeping matter. But the district court, like I said, just sort of brushed it aside. Well, it probably wouldn't have made any difference even if they had met and conferred. The obvious question is, if that's how the court is going to view a violation of the rule, why is the rule even there? The second thing that was … There was a degree of discretion in enforcing local rules. Oh, certainly. All we're doing is underlying … I'm sorry. Doesn't a district judge can waive the local rule or he has discretion? This is not an abuse of discretion. And I'm not standing here trying to say it is. I'm just trying to say this was the first in a succession of things that did not go our way. So after a while, one gets frustrated. Well, so you have to raise it on appeal. And thus, our appearance. The second idea was we feel much more serious in that the slap motion itself was filed and no one disputes this at least four months after the service of the complaint. And doesn't the district judge have discretion to waive that, too? Yes. So what are we talking about? I mean, why don't you just argue your main point? And I'd like to go back. One of the things that interests me here, maybe as an academic matter, is under Erie, isn't this really the equivalent of a motion for summary judgment? That is, a slap motion. Doesn't Rule 56 govern here? And in order to defeat, essentially, their motion for summary judgment, do you have to show that there's enough evidence to create a material issue of fact? Indeed, that is one way one could state it. However, as I said before, and I don't want to drive this point into the ground, there is a certain amount of ambiguity into how much evidence one needs to put forward in order to defeat a slap motion. Well, if it's really, if we treated it as essentially a motion for summary judgment, it's clear what you need to do to defeat a motion for summary judgment. You have to come forward with admissible evidence that would show that there's a triable issue of fact. If Rule 56 governs as opposed to, this is viewed as procedural rather than substantive. My hesitation with wholly accepting that premise is that, as I pointed out before, slap motions typically happen at the very beginning of litigation, before discovery has even started. Therefore, you're left with arguing against a slap motion with nothing much more than the allegations that appear in your complaint. You haven't deposed anyone, you haven't submitted written questions, you don't have a lot to go on, which I feel supports the idea of only minimal merit need be shown. Appellants submit that the... Haven't we held that the discovery limiting aspects of an anti-slap statute do not apply in federal court because they directly conflict with the discovery provided by Rule 56? The case is Metabolic Intern Incorporated v. Warnick at 264 F. 3rd, Day 32. I do not dispute that, Your Honor. So, if that's correct, then you do have an opportunity for discovery. A basic level of discovery, as it were, maybe not a chance to ask all the questions or get all the depositions that you might want to have before you have to fight a summary judgment motion. And during this time, may I point out, in this particular case, the case had been removed and there were motions for remand and motions for transfer of venue. Let me get down to brass tacks. I mean, the suit filed against your client that you contend was a malicious prosecution was a fraudulent transfer suit. The allegation was that your client was transferring real property to a trust in order to avoid obligations to pay the judgment. And the complaint is filed and you say, well, wait a minute, this can't be a fraudulent transfer because it's a transfer to a revocable trust and that's not a fraudulent transfer. Once that information is conveyed to the plaintiff in the prior suit, the defendant now, the plaintiff dismisses. Is that a proper narrative as to what happened? Yes, Your Honor. Now, the complaint doesn't say transferred to a revocable trust. The complaint in that original suit, the fraudulent transfer suit, said transferred to a trust. Are you saying that at the time the plaintiff filed that complaint, the plaintiff knew it was a revocable trust but nonetheless simply wrote trust? That is to say that they knew the underlying facts and nonetheless filed the complaint bearing that fact? No, Your Honor. The easiest reason that I cannot say that is I was not involved in litigation back at that point. However, that brings up our contention that respondents knew or should have known that their claim, their fraudulent conveyance claim suit was a nonstarter. They were consisted of California attorneys. Maybe that's enough to establish lack of probable cause or whatever the phrase is, but essentially they made a mistake of law. When they discovered it, they corrected it. They had already obtained a judgment in Idaho for $2.1 million and the right to have the jet returned to them, and they were just trying to enforce the judgment in California, and they made a mistake of law in filing the lawsuit. Where's the malice? They were bringing it, quite obviously, to what they believed was to secure their legal rights. Where is the malice here? Well, that is what this case essentially comes down to. We submit. Well, tell me where the malice is. We show that we won the underlying litigation. We show that there was no probable cause, so it comes down to malice. Curiously, we submit a case law in our brief that says, well, first of all, since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence. That is a given. But we submit a case law that says examples of improper purposes, i.e. malice, include the following. Person initiating them does not believe that this claim may be held valid. Now, obviously, and respondents argued, we didn't know. We don't know what was on their minds when they filed it. We don't know what they knew or they didn't know. The district court said, well, they dismissed their action, therefore, no harm, no foul. We submit that's an issue of fact, although we don't have ironclad proof that they did it for a proper purpose. The reason is they did a thing which is considered an element or possible element of malice, which is. But is that by itself sufficient to establish malice? No, I'm just pointing out that that factor is there. We have quotes from one of the respondents, the CFO of the finance group, who was quoted as saying one time, we're going to see them out on the streets. Now, again, the district court read this as, oh, well, that's just them pursuing their judgment. And maybe that's how you could read it. But to me, this is an issue of fact. This is something you present to a jury and they get to decide whether there was bad motive there or whether they were just pursuing a judgment. Another quote from the same individual, one of the respondents was, we're going to get her, referring to Ms. Stein. You could interpret that to mean we're going to get money from her or that could be something more ominous. We just don't know. I'm sorry? They're going to kill her? I'm not suggesting that at all. But with such an ambiguous comment, that could sound more than just we're going to get the money she owes us. The problem for me with your version of the case in the malice is the four-month period that you don't seem to be aware of. That is, from the time of filing to the time of filing if you're dismissal is a very short period. It's only four months. And in that period we have a complaint that's filed that says trust. And if it had been a trust, not a revocable trust, but an irrevocable trust, that would have been a fraudulent transfer or very well could have been. They are then informed, wait a minute, this is a revocable trust. They dismiss the suit. That all happens in four months. That's pretty fast. I just don't see malice. I see a mistake of fact. I see perhaps a failure of inquiry. On the other hand, if you're getting what truly is a fraudulent transfer of a piece of real property to a real trust, and that trust then sells it to a bona fide purchaser, they're in a position where they've got to move fairly fast. And so they move fast. They file a fraudulent transfer suit. As soon as your client tells them, wait a minute, it's a revocable trust, they dismiss. I don't see the malice. Again, all I can say, Your Honor, is that these are issues of fact that the appellants never had a chance to present to a jury. And assuming the issue, the standard of minimal merit, we felt we met that standard in showing malice. You've got a minute left. Let's hear on the other side and then you can respond. Thank you, Your Honor. Thank you. May it please the Court. Byron Hollins on behalf of appellees. The actual time frame, Your Honor, was in September of 2010, I think, or 2009 when the initial complaint for fraudulent transfer was filed. The motion to expunge was filed November 10. An errata to that motion to expunge was filed November 30. The dismissal was January 5. So it was even substantially less. So September, October, November, December. So four months. Four months initially from the initial filing of the fraudulent conveyance lawsuit. The motion to expunge filed by the defendants, which was Ms. Stein and the trust, was filed November 10. And an errata to that motion was filed November 30. The dismissal was filed January 5. So it was actually two months or less. From the time you learned. When we first learned about the fact that it was a replica of the trust. And four months of that from the time of initial filing. Of initial filing. That is correct. Your Honor, I don't think there is much for me to argue here. If you have questions, I'll be more than pleased to answer those questions the Court and panel has. All right. Then we'll submit on the briefs, Your Honor. Thank you. Would you like your minute? And we submit, Your Honor. Okay. Thank both sides. Hampton Stein v. Aviation Finance Group now submitted for decision the last case on the argument calendar this morning. Canyon View Estates v. FDIC. Now, we did a special scheduling order in response to letters from the parties. And we may have given you more time than you need. As you just saw from the last case, we're quite open to getting time back if the parties are pleased to give it to us. But the order of argument is FDIC, 15 minutes. Canyon View, 15 minutes. Attorneys, 15 minutes. Each side having the possibility of saving time for rebuttal. And what I'd like to do is each of you three go forward first, and then in sequence, each of you use time for rebuttal.
judges: Korman, Farris, Fletcher